**UNITED STATES DISTRICT AND BANKRUPTCY COURTS**
**FOR THE DISTRICT OF COLUMBIA**

FILED

MAR 25 2015

Clerk, U.S. District and Bankruptcy Courts

SARA THOMPSON
1625 E ST. NE APT #1
WASHINGTON, DC 20002
(402) 880-3268

VS.

PEACE CORPS
1111 20TH STREET NW
WASHINGTON, DC 20526

Case: 1:15-cv-00437
Assigned To : Jackson, Amy Berman
Assign. Date : 3/25/2015
Description: PI/Malpractice (B Deck)

**COMPLAINT**

1. I am a thirty-two year old female who is currently living in Washington, DC.

2. Prior to joining Peace Corps in June 2010, I led a very healthy, active lifestyle to include running marathons, participated in yoga classes without any issues during class, and pursued an overall active lifestyle.

3. When I was twenty-six, I applied to become a Peace Corps Volunteer during the month of January 2009.

4. By March 2010, I was offered and accepted an assignment to become a Girls' Education and Empowerment Peace Corps Volunteer (PCV and heretofore, Peace Corps Volunteers are referred to as PCVs) for Burkina Faso, West Africa.

5. In June, 2010, I flew to Philadelphia, PA for pre-service training.

6. After two days of crash courses in Peace Corps policy, cross-cultural training, and a consulate visit, I flew to Burkina Faso to begin a rigorous three months training regarding safety and security issues, cross-cultural matters, medical and health safety, language training, etc.

7. In August 2010, I successfully passed my three months of pre-service Peace Corps training and was sworn in as an official Peace Corps Volunteer.

8. From the moment that I started training in Burkina Faso, I was given anti-malarial medication, called mefloquine, (also known as the brand name, Lariam but will, heretofore, be referred to as the generic name of mefloquine) in concentrated doses for the first three days which is contrary to the CDC recommendations (document #1, Medicines for the Prevention of Malaria While Traveling).

RECEIVED

MAR 25 2015

Clerk, U.S. District and Bankruptcy Courts

9. As Peace Corps mandates that all pre-service Peace Corps trainees and Peace Corps Volunteers take an anti-malarial prophylaxis and if at any time I refused to take mefloquine, I would be terminated from Peace Corps.

10. The prevailing practice surrounding mefloquine dosage in the Peace Corps is 1 pill at 250mg per week.

11. Throughout my service, I did exhibit several health issues related to impaired cognitive functioning. I consistently would misplace everyday items, when in the States, I am a very organized person. I always blamed this behavior on the fact that I was in a new environment and was not acclimated to my surroundings.

12. I would sleep more than sixteen hours a day, over twelve at night and a four-hour nap frequently, about 3-4 times per week. I would always excuse this excessive lethargy as just adjusting to a new culture and speaking a different language.

13. When I would be around other PCVs, if something was missing or somehow misplaced, I always blamed it on other PCVS and would often experience symptoms of paranoia that other PCVs would specifically target me and my belongings.

14. While making dinner or reading in my hut, I would often think that I saw things out of the corner of my eyes and then blame it on insect or dust movement that I had never before experienced as I would not live with dust and/or bugs inside my house in the States.

15. I would often experience these situations as a reality of my life and often, find any of this abnormal behavior as excusable because I was living in a developing country and was consistently adjusting to my new life without running water or electricity.

16. However, throughout my two years of service, none of these behaviors dissipated and looking back, all of these behaviors intensified.

17. At no time during my Peace Corps training or Peace Corps service did a Peace Corps Medical Officer (PCMO) or any other authorized medical professional from Peace Corps talk to me about any potential medical or psychological health issues that I was experiencing.

18. Moreover, at no time did a Peace Corps Medical Officer or any other authorized medical professional from Peace Corps during my Peace Corps service have a conversation with me about any possible adverse effects that I might be experiencing that could have potentially stemmed from my mefloquine ingestion.

19. Despite understanding health threats and risks and taking precautions to avoid any medical and/or health issues, during my service, I did suffer through several health and medical issues.

20. I had frequent fevers, was diagnosed with several parasites, endured several nights of diarrhea, and contracted chronic staph infection in the form of boils in which I have successfully filed a Federal Employee Compensation Act claim.

21. During my last month of service in August 2012, I suffered severe dizziness and vertigo symptoms to the point of vomiting.

22. When I called my Peace Corps Medical Officer, he informed me that as it seemed unlikely there was a head injury, I could wait until I met with the PCMO for my Close of Service (COS) process.

23. When I reached the Capital, Ouagadougou, for my COS and completed all paperwork to successfully finish my Peace Corps Service, I did speak to the acting PCMO at the time who was a visiting nurse practitioner.

24. The nurse practitioner stated that I must have an ear infection and prescribed me anti-nausea pills.

25. Before this intense dizziness episode, it is important to note, I had never in my life been diagnosed with an ear infection nor have I ever had any health issues as it relates to my ears and ear anatomy.

26. From August 2012 to the present day, I continually suffer through intense bouts of dizziness, vertigo, and disequilibrium.

27. As these symptoms had started while I was in Peace Corps, I successfully filed a Federal Employee Compensation Act claim with the US Department of Labor (DOL).

28. I have seen an Ear, Nose, and Throat doctor, Dr. Frederic P. Ogren, MD at Alegent Creighton Health in Omaha, Nebraska who conducted several tests to include an MRI scan.

29. I also consulted with Ear, Nose, and Throat dizziness specialist, Dr. Dennis Fitzgerald at MedStar Washington Hospital Center who reviewed the existing tests and diagnosed me with Benign Paroxysmal Positional Vertigo.

30. I also consulted my primary physician in DC, Dr. Jack Summer who conducted routine blood tests to ensure my body was functioning properly.

31. With these prevalent symptoms, one would assume that my medical tests would reveal abnormalities or other varying results that do not reflect normal levels. This is

not the case. My blood tests, my MRI and other test results reveal a completely normal, functioning brain, with no abnormalities.

32. Even though these tests come back normal, I still experience intense dizziness, vertigo, and disequilibrium episodes which continued and seemed to occur with more frequency and intensity in addition to neuropsychiatric issues in which mefloquine has been diagnosed to have been the cause of these issues.

33. Due to my recent diagnostic, I now understand that I have a permanent brain injury. This injury has affected my life to the extent that I am uncertain about my future.

34. As stated, before my Peace Corps service, I was a healthy, active, and a rather normal, functioning human being.

35. This indicates to me that the drug is dangerous and my life will never be the same in the sense that I will forever experience intense and unanticipated episodes of dizziness, vertigo, and disequilibrium.

36. During my training and throughout my Peace Corps service, I was never advised of these side effects of mefloquine to the extent of chronic brain damage as a result of taking mefloquine. The risk of such extensive brain damage is not mentioned in any of the Lariam documents including waiver that I signed (document #2, Lariam information sheets and document #3, waiver).

37. The government was negligent with the dispersal of this medication as Peace Corps should have ensured that PCVs are not adverse to the drug, mefloquine, and the lack of monitoring and evaluation by the PCMOs to reveal that they have not fulfilled their required role to the extent that I still suffer and my life has been miserable.

38. Before entering Burkina Faso, I should have been given the recommended dose of mefloquine two weeks before leaving the United States (document #1).

39. After ingesting the drug, Peace Corps Medical Officers should have sat down with each individual Volunteer who was prescribed mefloquine and talked about the possible side effects of the drugs to include neurotoxicity and chronic brain damage in addition to impaired cognitive abilities.

40. Moreover, psychologists and neurologists should have conducted frequent and exhaustive tests and evaluations to ensure the health and safety of each Peace Corps Volunteer, especially as each PCV is in a new, harsh living environment.

41. Peace Corps was negligent as they should have known the drug they prescribed would result in brain damage.

42. Peace Corps withheld this information from me and did not adequately inform me of the issues surrounding mefloquine to the extent that I could have chosen a different drug.

43. I filed an SF-95 administrative claim with the Peace Corps (document #4).

44. Peace Corps Chief Counsel responded by denying responsibility (document #5).

45. Finally, while the origins of the case seem to have started in Burkina Faso, the Peace Corps permitted that I travel overseas, with the knowledge that I had the possibility of being prescribed mefloquine, without assessing me for the drug's tolerance and without beginning my regimen while still in country, as is considered the standard of care (document #6, *Leaf v United States*).

46. Furthermore, even if this case is considered to have originated in a foreign country, exception to this has been already been decided in a court case as precedence (document #6, *In re Agent Orange Product Liability Litigation*).

47. As I continually suffer from mefloquine toxicity and I am unsure about my quality of life for the remainder of my life due to these chronic physical and mental health issues, I am requesting $1,000,000 in damages.

48. This claim is also requesting that Peace Corps ***officially*** use mefloquine as a drug of last resort.

49. I had filed this claim on March 3, 2015 *in forma pauperis* (IFP) to proceed with this complaint without the burden of payment (document #7 and #8).

50. I received notice that Honorable Judge Randolph D. Moss denied my request to file as pro se on March 16, 2015 (document #9).

51. Therefore, I am refiling this claim and paying the appropriate court fees as such.

ORIGINAL SIGNATURE

Sara T. Thompson

Sara T. Thompson, plaintiff
1625 E Street NE, Apt #1
Washington, DC 20002
(402) 880-3268