UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARA THOMPSON, </br></br> Plaintiff, </br></br> v. </br></br> PEACE CORPS, </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 15-0437 (ABJ) </br> ) </br> ) </br> ) </br> ) </br> ) |

## MEMORANDUM OPINION

*Pro se* plaintiff Sara Thompson brought this action against the Peace Corps, alleging that she was harmed by taking mefloquine, an anti-malarial drug which was required as part of her service as a Peace Corps volunteer in Burkina Faso, West Africa. Am. Compl. [Dkt # 4]. Defendant has moved to dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6). Def.'s Mot. to Dismiss [Dkt. # 10] ("Def.'s Mot."). Because the United States has not waived its sovereign immunity under the Federal Tort Claims Act for claims arising out of injuries sustained in foreign countries, and because the Peace Corps Act does not provide plaintiff with an independent cause of action against defendant, the motion to dismiss will be granted.

## BACKGROUND

Plaintiff applied to become a Peace Corps volunteer in January 2009, and in March 2010, she was offered and accepted an assignment to become a Girls' Education and Empowerment Peace Corps volunteer in Burkina Faso, West Africa. Am. Compl. ¶¶ 3–4. In June 2010, she attended two days of pre-service training in Philadelphia, Pennsylvania, and then flew to Burkina Faso for three months of training on "safety and security issues, cross-cultural matters, medical

and health safety, [and] language training." *Id.* ¶¶ 5–6.  She was sworn in as an official Peace Corps volunteer in August 2010. *Id.* ¶ 7.

Plaintiff states that "[f]rom the moment that [she] started training in Burkina Faso, [she] was given anti-malarial medication, called mefloquine." Am. Compl. ¶ 8.  She alleges that the Peace Corps requires all volunteers and trainees to take an anti-malarial prophylaxis, and that if she had refused to take the drug, she would have been terminated from the Peace Corps. *Id.* ¶ 9.  She contends that the manner in which she was given the drug – "in a concentrated loading dose for the first three days" – was contrary to the recommendations of the Centers for Disease Control and was not approved by the Food and Drug Administration. *Id.* ¶ 8.

Plaintiff alleges that she suffered "several health issues related to impaired cognitive functioning" during her time as a Peace Corps volunteer as a result of taking mefloquine. Am. Compl. ¶¶ 11–15, 21.  Specifically, plaintiff states that she would "misplace every day items," "sleep more than sixteen hours a day," "experience symptoms of paranoia," hallucinate, and experience severe dizziness and vertigo, which caused her to vomit. *Id.*  She also states that from August 2012 to the present, she has continued to suffer "intense bouts of dizziness, vertigo, and disequilibrium," and has repeatedly sought medical treatment to address her health issues without success. *Id.* ¶¶ 26, 28–32.  She believes that she has "a permanent brain injury" and she states that the injury has affected her life and made her uncertain about her future. *Id.* ¶ 33.

Plaintiff initiated this action on March 25, 2015, Compl. [Dkt. # 1], and she filed an amended complaint on April 14, 2015. Am. Compl.  She contends that the Peace Corps failed to advise her of the risks of taking mefloquine in the manner in which it was prescribed to her, and that the Peace Corps was negligent in dispensing the drug to its volunteers. *Id.* ¶¶ 36–38.  She maintains that the Peace Corps should have provided extensive training and counseling to its

volunteers prior to and after administering mefloquine, and that the Peace Corps improperly withheld information from her regarding mefloquine's side effects, depriving her of the choice to take another drug. *Id.* ¶¶ 39–42.[1]

On August 12, 2015, defendant moved to dismiss plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim. Def.'s Mot.; Mem. in Supp. of Def.'s Mot. [Dkt. # 10] ("Def.'s Mem."). Plaintiff opposed the motion on November 25, 2015. Opp. of Pl. to Def.'s Mot. [Dkt. # 14] ("Pl.'s Opp."). Defendant did not file a reply.

## STANDARD OF REVIEW

### I.  Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

---

1   In her opposition to defendant's motion to dismiss, plaintiff appears to concede that she was given a choice of three anti-malarial drugs, and that she picked mefloquine, but she contends that the Peace Corps did not provide her with sufficient information to make an informed decision about which drug to choose. Opp. of Pl. to Def.'s Mot. [Dkt. # 14] [Dkt. # 14] at 23–24.

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.     Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1276 (D.C. Cir. 1994). Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider [her] filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept the plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

**I.     The Court lacks subject matter jurisdiction over this case pursuant to the foreign country exception to the Federal Tort Claims Act.**

Plaintiff's amended complaint offers little to assist the Court in determining the legal basis for her claims against the Peace Corps, other than to assert twice that defendant acted negligently when it administered mefloquine to plaintiff. *See* Am. Compl. ¶¶ 37, 41. However, her citations to case law suggest that she intended to bring this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2680. *See* Am. Compl. ¶¶ 52–53, citing *Leaf v. United States*, 588 F.2d 733 (9th Cir. 1978), and *In re Agent Orange Prod. Liab. Litig.*, 580 F. Supp. 1242 (E.D.N.Y. 1984). Plaintiff also attached a treatise on the FTCA, entitled "Away from Justice and Fairness: the Foreign Country Exception to the Federal Tort Claims Act," as an exhibit to her

amended complaint. Ex. 12 to Am. Compl. [Dkt. # 4-1]. And in response to defendant's motion to dismiss, which treated plaintiff's claims as arising under the FTCA, *see* Def.'s Mem. at 1, plaintiff acknowledged that the "only recourse for the remaining claims is the FTCA," Pl.'s Opp. at 18, and she repeatedly characterized her claims against defendant as sounding in negligence. *See id.* at 7–8, 23, 26. Therefore, the Court will construe plaintiff's amended complaint as asserting tort claims against the federal government under the FTCA.

"The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004), citing *Richards v. United States*, 369 U.S. 1, 6 (1962); *see also* 28 U.S.C. § 2674. Specifically, the FTCA provides a limited waiver of the government's sovereign immunity "for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

But there are exceptions to the FTCA's immunity waiver. *See, e.g., id.* § 2680. And "[w]hen one of the FTCA's exceptions applies – that is, when the Government has *not* waived its sovereign immunity . . . the federal courts lack subject-matter jurisdiction" over the case. *Harbury v. Hayden*, 522 F.3d 413, 423 (D.C. Cir. 2008); *see also Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001). In particular, the FTCA excludes from its waiver of sovereign immunity "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). This exception is expansive: it "bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." *Sosa*, 542 U.S. at 712.

Plaintiff's claims in this case arise exclusively out of the side effects she experienced and the injuries she sustained from taking mefloquine, and plaintiff concedes that she did not begin taking the drug – or suffering any ill effects – until after she arrived in Burkina Faso. *See* Am. Compl. ¶ 8 ("From the moment that I started training in Burkina Faso, I was given anti-malarial medication, called mefloquine . . . ."). Plaintiff does not allege that she was ever administered mefloquine in the United States prior to her departure to Africa in 2010, and while she does complain of continuing side effects after her return home in 2012, her claims based on those injuries arose out of the administration of mefloquine in Burkina Faso. Plaintiff's injuries were thus suffered in a foreign country, and on that basis, the Court could conclude that it lacks subject matter jurisdiction over this case pursuant to the foreign country exception. *See Sosa*, 542 U.S. at 712.

Plaintiff acknowledges that "the origins of the case seem to have started in Burkina Faso," but she argues that the Peace Corps took actions in the United States that deviated from the appropriate standard of care. Am. Compl. ¶ 52. In her opposition, plaintiff appears to suggest that because defendant failed to provide her with sufficient information regarding the dangers and side effects of mefloquine before she left the United States, the foreign country exception should not apply to her claims. *See, e.g.*, Pl.'s Opp. at 13–15 (describing plaintiff's communications and meetings with defendant in the United States prior to her departure to Burkina Faso during which plaintiff alleges defendant failed to provide sufficient information regarding mefloquine); *id.* at 16 ("[T]he distribution and communication of the anti-malarial policy and the anti-malarial drugs should have occurred on U.S. soil."). She also offers the following facts in support of her contention that the Court has jurisdiction over this action:

> The contract that the Plaintiff entered with the defendant was executed within the boundaries of the United States. Peace Corps Headquarters are

>   within the boundaries of the District of Columbia. Plaintiff's contract to act on behalf of Peace Corps was formed through inter-state communications from Plaintiff in Homer, Alaska to the Defendant in Washington, D.C. either directly or through Peace Corps designated agents. . . . The events leading up to the claims by the Plaintiff occurred within the confines of the United States, at the direction of Peace Corps and any other agents purported to represent the Peace Corps within the boundaries of the United States or Burkina Faso, therefore, this Court has complete jurisdiction over the issues at hand.

*Id.* at 15–16.

But this argument – that "because [defendant's] negligent direction and oversight occurred in the United States, the foreign-country exception should not apply" – "is precisely what *Sosa* rejected." *Gross v. Def. Alternatives, Inc.*, 946 F. Supp. 2d 120, 124 (D.D.C. 2013), *aff'd sub nom. Gross v. United States*, 771 F.3d 10 (D.C. Cir. 2014), citing *Sosa*, 542 U.S. at 701–03. In *Sosa*, the plaintiff suffered injuries in Mexico, but the Ninth Circuit permitted his case to proceed after finding that his injuries were "the direct result of wrongful acts of planning and direction by DEA agents located in California." 542 U.S. at 702. In rejecting this so-called headquarters doctrine, the Supreme Court reiterated that "the FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." *Id.* at 712.

Following the *Sosa* Court's reasoning, even if the Peace Corps acted negligently in the United States when communicating the risks of mefloquine, plaintiff's injuries were still sustained as a result of taking the drug in Burkina Faso, and the foreign country exception bars her tort claims against the federal government.[2] For those reasons, the Court finds that it lacks subject matter

---

2   Plaintiff also argues that, "even if this case is considered to have originated in a foreign country, exception to this has been already been decided in a court case as precedence." Am. Compl. ¶ 53, citing *In re Agent Orange Prod. Liab. Litig.*, 580 F. Supp. 1242 (E.D.N.Y. 1984). But the *Agent Orange* case preceded *Sosa*, and it was explicitly rejected in that decision. *See Sosa*, 542 U.S. at 710–11.

jurisdiction over plaintiff's claims, and defendant's motion to dismiss under Rule 12(b)(1) will be granted.[3]

## II. The Peace Corps Act does not provide plaintiff with a private right of action against defendant or the United States.

In an abundance of caution and in recognition of plaintiff's *pro se* status, the Court will also consider what it interprets as plaintiff's assertion of claims under the Peace Corps Act, 22 U.S.C. § 2504. In her opposition to defendant's motion to dismiss, plaintiff states that she "relies completely on the statutory language set forth by the Peace Corps Act," and she asserts that "[t]he controlling law that should be utilized in the court's making its jurisdictional decision is the Peace Corps Act." Pl.'s Opp. at 4; *see also id.* at 7 ("[T]he Court has jurisdiction of this case as set forth by the Peace Corps Statute . . . ."). She contends that "[t]he Peace Corps Act specifically highlights the ability of a Peace Corps Volunteer or a Returned Peace Corps Volunteer to pursue litigation against Peace Corps," *id.* at 10, and she quotes at length from various provisions of that statute throughout her opposition. *Id.* at 4–6, 11–12, 21–23. She also argues that "it would be proper for Peace Corps Volunteers and Returned Peace Corps Volunteers to bring tort claims against the United States Government" under the Peace Corps Act, and that "Congress' intent was to allow this to occur." *Id.* at 16.

To the extent that plaintiff is attempting to assert a cause of action under the Peace Corps Act, she cannot do so. That statute does not provide an independent, private right of action against

---

3    In her opposition, plaintiff outlines the elements of a cause of action for negligent or fraudulent misrepresentation, ostensibly in support of her claim that defendant "either intentionally or unintentionally, did not disclose all relevant information regarding the anti-malarial drug, mefloquine" and she states that she "detrimentally relied on these omissions." Pl.'s Opp. at 7–8. But the FTCA also categorically excludes from its sovereign immunity waiver "[a]ny claim arising out of . . . misrepresentation." 28 U.S.C. § 2680(h). Thus, to the extent that plaintiff is seeking to assert a claim of misrepresentation against the Peace Corps, it is still barred by an FTCA exception, and the Court still lacks jurisdiction over this case.

the Peace Corps or the United States, or a waiver of the government's sovereign immunity to such claims.

First, while it is true that the Peace Corps Act addresses tort claims, it states only that "[v]olunteers shall be deemed employees of the United States Government for the purposes of the Federal Tort Claims Act and any other Federal tort liability statute." 22 U.S.C. § 2504(h). It does not provide a mechanism for a Peace Corps volunteer to hold the government liable for damages; rather, it contemplates holding a Peace Corps volunteer liable under the FTCA for causing harm to another while acting as an "employee of the Government." *See id.*; 28 U.S.C. § 1346(b)(1).

Plaintiff also specifically references section 2504(i) of the Act, which provides that "[t]he service of a volunteer may be terminated at any time at the pleasure of the President." 22 U.S.C. § 2504(i). She argues:

> [A]s the President is allowed to terminate the service of any volunteer, as outlined by the Peace Corps Act, the President's ability to perform duties asserting the jurisdiction of the Executive branch overseas, the exclusion of the Judicial Branch would be a gross violation of the checks and balances as outlined by our Founding Fathers. Therefore, as outlined, the District Court has complete subject matter jurisdiction of Plaintiff's complaint as set forth in this document.

Pl.'s Opp. at 13. It appears that plaintiff is attempting to argue that it would somehow be inequitable or improper to permit the President to assert his authority overseas by terminating Peace Corps volunteers while simultaneously depriving the courts of the authority to hear claims asserted by volunteers that arise overseas. *Id.* But the statute makes clear that Peace Corps volunteers serve "at the pleasure of the President," 22 U.S.C. § 2504(i), obviating the need for any checks and balances by the judiciary. And the fact remains that the Act does not provide for a private right of action against the government based on injuries sustained as a result of service in the Peace Corps.

Thus, the Court finds that plaintiff cannot sustain a cause of action against defendant pursuant to the Peace Corps Act, and insofar as the amended complaint attempts to assert such a claim, it will be dismissed pursuant to Rule 12(b)(6). *See, e.g., Alexander v. Wash. Gas Light Co.*, 481 F. Supp. 2d 16, 32–33 (D.D.C. 2006) (granting the defendant's Rule 12(b)(6) motion to dismiss where neither statute relied upon by the plaintiff "creates a private right of action").[4]

## CONCLUSION

Because the government has not waived its sovereign immunity to plaintiff's claims under the Federal Tort Claims Act, and because the Peace Corps Act does not provide plaintiff with an independent cause of action, the Court will grant defendant's motion and dismiss this case in its entirety.

A separate order will issue.

*/s/ Amy B. Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: February 8, 2016

---

[4] Because the Court finds that plaintiff has failed to state a claim over which this Court may properly exercise its jurisdiction, it will not reach defendant's other arguments in favor of dismissal, including its contention that plaintiff's claims are untimely.